UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MARCUS ALAN MAYS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 2:21-CV-63 CDP |
| | ) |
| JERROD EISENBURG, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the amended complaint and multiple supplements filed by self-represented Plaintiff Marcus Alan Mays. ECF No. 9-10, 12. The Court previously granted Plaintiff *in forma pauperis* status and granted his motion for leave to amend. ECF No. 7. The Court warned Plaintiff that his amended complaint would be reviewed under 28 U.S.C. § 1915. As discussed below, defendants Dillon Sparrow, Dakota Cross, Nick Bringer, and Hope Miller will be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). However, Plaintiff has sufficiently stated a claim of deliberately indifferent medical care as to defendants Jerrod Eisenberg, David Parrish, and Dr. Herbert Childress, in both their individual and official capacities. As such, the Court will partially dismiss the amended complaint and will order the Clerk to issue process or cause process to be issued as to defendants Jerrod Eisenberg, David Parrish, and Dr. Herbert Childress.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-

pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

### The Amended Complaint

Plaintiff Marcus Mays is a pretrial detainee being held at the Lewis County Jail in Monticello, Missouri. ECF No. 9 at 2. His amended 42 U.S.C. § 1983 complaint is brought against seven defendants: (1) David Parrish (sheriff); (2) Jerrod Eisenberg[1] (jail administrator); (3) Dillon Sparrow (jailer); (4) Dakota Cross (jailer); (5) Nick Bringer (jailer); (6) Hope Miller (jailer); and

---

[1] Plaintiff spelled this defendant's last name as "Eisenburg" on his initial complaint but as "Eisenberg" on his amended complaint. *See* ECF Nos. 1 at 1-2 & 9 at 1, 5. The Clerk of Court will be directed to update the docket sheet to reflect the spelling provided on the amended complaint.

(7) Herbert Childress (jail doctor). *Id.* at 1-5. Plaintiff names all the defendants in both their individual and official capacities. *Id.*

According to Plaintiff, sometime in 2020 he was punched in the jaw at the Marion County Jail in Palmyra, Missouri. *Id.* at 5. As a result of that assault, he has suffered from extreme jaw pain; an inability to fully open his mouth, to chew food on the right side of his mouth, or to bite food without extreme pain; headaches; popping in his jaw; and ear issues. *Id.* Plaintiff alleges that all the named defendants have harmed him by "allowing [him] to continue to be in pain and suffer and potentially allow the issue to get worse." *Id.* at 6.

Plaintiff asserts that the named jailer defendants (Dillon Sparrow, Dakota Cross, Nick Bringer, and Hope Miller) "failed to get [him] medical attention after multiple complaints and requests for medical help." *Id.* They allegedly failed to schedule Plaintiff for a doctor's appointment after he explained his issue and the pain he was suffering; they delayed him medical attention; and they continued to give him Tylenol and Ibuprofen, even after Plaintiff informed them that those medications were not helping. *Id.*

Plaintiff describes defendants David Parrish (Lewis County Sheriff) and Jerrod Eisenberg (Lewis County jail administrator) as "high ranking officials" and alleges that they failed to approve him for a doctor's visit; failed to take him to the doctor or emergency room when he requested; and failed to allow him to speak with and be seen by the jail doctor. *Id.* Finally, Plaintiff describes Herbert Childress as the "physician / jail doctor" and asserts that he "refused" to see Plaintiff for his medical condition but prescribed Plaintiff with "unnecessary" medications without talking to Plaintiff or ever physically visiting with him. *Id.* at 4, 6.

Plaintiff states that he has received no medical attention in person or through telehealth. He describes his injuries as continuous jaw pain and a constant feeling of water in his ear. He

states that he may need an X-ray, MRI, or CT scan, but he isn't sure because he is not "medically certified." *Id.* at 6. For relief, Plaintiff seeks money damages. *Id.* at 7-8.

Included with the amended complaint are nine[2] Inmate Request and Complaint Forms filed by Plaintiff at the Lewis County Jail.[3] *Id.* at 10-19. The forms are dated between September 8th and October 14th, 2021. It appears that different jailers initially accepted these complaint forms from Plaintiff (most of their names are indecipherable from their signatures on the forms), but that the first eight of the complaints were responded to by defendant Jerrod Eisenberg (*id.* at 10-18) and the last complaint was handled by defendant David Parrish (*id.* at 19).

On September 8, 2021, Plaintiff requested a doctor visit and an X-ray regarding his jaw injury. He explained that he was having problems biting and chewing food and opening his mouth. Two days later, Eisenberg responded that he would contact the doctor and schedule an appointment if the doctor thought it was necessary. *Id.* at 10. At some point, Plaintiff was informed that he would not be seeing a doctor. Three days later (September 13), he filed a second complaint stating that he did not "understand how a medical decision [could] be made without an exam." Eisenberg responded the same day that the Jail reports "all medical issues to the jail doctor who decides a course of treatment which [they] follow." *Id.* at 11.

On September 16, Plaintiff filed two complaints. On the first, he again requested to see a doctor and get an X-ray concerning his jaw, explaining that he "can't bite anything too hard and chewing is extremely difficult." He stated that the Tylenol and Ibuprofen "don't work," that he hears "clicking and popping" when he chews, and that it feels like his jaw "snags" on something

---

[2] Although Plaintiff included ten pages of grievance filings, it appears that one page is a duplicate. *See* ECF No. 9 at 12-13.

[3] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

- 4 -

when he tries to open it.  Eisenberg responded the next day that he would speak with the doctor and "follow his direction."  *Id.* at 12.  On the second September 16th complaint, Plaintiff alleged that he was denied anything "edible" at dinner because the pizza was "too hard to chew or bite with jaw issues."  Eisenberg responded that he would again speak to the doctor and follow the doctor's orders, and that Plaintiff can eat his purchased commissary items if he does not like the provided meal.  *Id.* at 14.

Plaintiff filed another complaint about jaw pain and requesting to see a doctor, on September 20th.  Eisenberg responded that "medication for this issue was given" and that the doctor had been contacted and no appointment was made, based on the doctor's discretion.  *Id.* at 15.  Plaintiff was prescribed an antibiotic on September 28th, prompting Plaintiff to file another grievance requesting to see a doctor about his jaw pain and complaining that he was prescribed medication without seeing a doctor or having an exam.  Eisenberg responded that the doctor had deemed no appointment was needed and that he could not answer any medical questions as to the antibiotic prescription.  *Id.* at 16.

On October 5th, Plaintiff stated that he had finished the prescribed antibiotic and that his jaw problem and pain were unchanged.  He complained again about not being able to see a doctor.  Eisenberg responded that if Plaintiff feels a doctor other than the Jail doctor "would be better," he should locate such doctor and "have an appointment made."  Eisenberg specified that the doctor must be located in Hannibal, Missouri.  *Id.* at 17.  A few days later, Plaintiff complained about intentional refusal and delay in receipt of medical care as being a constitutional violation and he received a similar response.  Eisenberg again told Plaintiff that if he didn't like the Jail doctor, he should "provide a doctor within the area and we will make an appointment."  *Id.* at 18.  In response, Plaintiff requested to be taken to see a doctor at the Hannibal "E.R." stating that no appointment is necessary and that he could be taken "when the jail has time, within reasonable time."  Defendant

Parrish responded to this request on October 19, stating: "No. Jail staff have advised you this is a dental issue as recommended by our physician. If you would like to see a dentist a family member can work with jail staff to make necessary arrangements." *Id.* at 19.

### Supplemental Filings

On January 13, 2022, the Court received a letter from Plaintiff with two additional complaints which he filed at the Jail on January 2nd. ECF No. 10. In the first, Plaintiff requested that the Jail set up a dental appointment for him. Plaintiff stated that he believed this service should be provided based on Missouri statute, and he provided copies of the statute, but that, if necessary, the Jail should add the $50 cost to his bill. On January 10, defendant Parrish responded: "No." *Id.* at 2-4. In his second complaint filed January 2, Plaintiff complained about the doctor determining his jaw issue to be a dental issue when he had never examined Plaintiff. Plaintiff then stated that the "jail says dental is NOT part of their medical responsibility so they couldn't do anything but if I'm correct RSMO 221.120[4] states otherwise so why has the jail neglected to get me dental attention?" Although the response is unsigned, it appears to have been written by Parrish (based on the handwriting) and states as follows:

> As we have explained numerous times, regular dental care is not medically necessary. On numerous occasions we have taken inmates in for dental care that was required due to potential for infection or abscesses. We understand your jaw may hurt and as prescribed by our physician we have offered tylenol or ibuprofen on a regular basis to insure you are not in pain. I also have reviewed your [indecipherable] account and you have over $60 on your account. It appears you would rather have phone calls, video calls & text then take care of your own medical complaint.

*Id.* at 5.

---

[4] Missouri Revised Statute 220.120 states as follows: "If any prisoner confined in the county jail is sick and in the judgment of the jailer, requires the attention of a physician, dental care, or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner. The costs of such medicine, dental care, or medical attention shall be paid by the prisoner through any health insurance policy … from which the prisoner is eligible to receive benefits. If the prisoner is not eligible for such health insurance benefits then the prisoner may be subject to levy and execution under court order to satisfy such expenses …."

Finally, on March 8, 2022, Plaintiff filed a copy of a grievance filing for a different inmate at the Lewis County Jail and asked that the document be "placed in the suit for evidence." ECF No. 12-1. On the request form, the non-party inmate states that he has two loose teeth that are causing him pain and "starting to interfere" with his eating and sleeping. In response, a dentist appointment was scheduled for the inmate a few days later. ECF No. 12.

## Discussion

Having carefully reviewed and liberally construed Plaintiff's allegations, the Court will dismiss defendant jailers Dillon Sparrow, Dakota Cross, Nick Bringer, and Hope Miller for failure to state a claim upon which relief may be granted under 28 U.S.C. 1915(e)(2)(B)(ii). There is no evidence that these jailers were personally involved in or directly responsible for any alleged deprivation of Plaintiff's rights. However, the Court will direct the Clerk to issue process or cause process to be issued against defendants David Parrish, Jerrod Eisenberg, and Dr. Herbert Childress on Plaintiff's allegations of deliberately indifferent medical care, in both their individual and official capacities.

### I.  Deliberately Indifferent Medical Care

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). Two such federally protected rights are the Eighth Amendment's prohibition on cruel and unusual punishment, and the Fourteenth Amendment's Due Process Clause. U.S. Const. amends. VIII & XIV.

Plaintiff is a pretrial detainee at the Lewis County Jail. The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene Cnty.*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

The Eighth Amendment prohibits cruel and unusual punishment, and limits conditions of confinement. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)).

A jail official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on a deliberate indifference claim, a plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence

- 8 -

intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05.

### A. Objectively Serious Medical Need

First, to state a claim of deliberate indifference, Plaintiff must demonstrate that he suffered from an objectively serious medical need. *Roberts*, 917 F.3d at 1042. A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

Here, Plaintiff filed his first request to see a doctor on September 8, 2021 and as of his last filing on January 2, 2022, he had still not seen a medical professional concerning his jaw issues. Over this four-month period, Plaintiff complains of difficulty eating and that over-the-counter pain medications and prescribed antibiotics have been ineffective against the pain. It is unclear at what point a doctor determined that Plaintiff's problems were a dental issue instead of a medical issue, because at no point was Plaintiff physically exam by a doctor.[5]

The Court finds Plaintiff's consistent and repeated assertions of jaw pain over a four-month period – with no relief from medications and causing Plaintiff to skip certain meals – as "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden*, 663 F.3d at 342. As such, Plaintiff has demonstrated an objectively serious medical need.

---

[5] To the extent that Plaintiff's pain can be construed as a dental issue, the Court finds that the facts of this case are distinguishable from a prior case where the Eighth Circuit Court of Appeals found that tooth pain did not constitute a serious medical need. *See Holden*, 663 F.3d at 342-43. In that case, there were no outward signs of injury, like bleeding or swelling, based on multiple examinations of the inmate's teeth and gums by a nurse, and where the inmate was observed eating without difficulty. Here, the Court does not have the benefit of knowing whether a medical professional would find swelling or bleeding in Plaintiff's mouth during a physical exam, because Plaintiff has not been examined. However, Plaintiff complains of near-constant pain and difficulty eating. The Court must accept Plaintiff's assertions as plead and liberally construe the pleadings. *See Solomon*, 795 F.3d at 787.

*See also Dadd v. Anoka Cnty.*, 827 F.3d 749, 755 (8th Cir. 2016) (discussing severe dental pain resulting in inability to eat and sleep as a serious medical need); *Arellano v. Sedighi*, No. 15-CV-02059-AJB-BGS, 2020 WL 5877832, at *25 (S.D. Cal. Oct. 1, 2020) (stating that "[p]ain that is so severe that a person is unable to fulfill his or her basic needs of eating, sleeping, and going to the bathroom is considered a serious medical need.).

## II. Jailer Defendants: Sparrow, Cross, Bringer, and Miller

Second, to state a claim of deliberate indifference, Plaintiff must demonstrate that the defendants actually knew of and disregarded his serious medical need. *Roberts*, 917 F.3d at 1042. Plaintiff alleges that jailers Sparrow, Cross, Bringer, and Miller failed to get him medical attention, including a doctor's visit and prescription (versus over-the-counter) pain medication, after multiple complaints and requests from Plaintiff. ECF No. 9 at 6. However, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (internal citations omitted). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights).

These jailer defendants accepted and conveyed Plaintiff's complaint forms to their superiors. Plaintiff does not allege that these jailer defendants delayed or failed in conveying his complaint forms to their decision-making supervisors. Their actions of passing on the complaint forms to the appropriate parties demonstrate that they did not deliberately disregard Plaintiff's medical need. There is no evidence that these jailers had the authority to make any decisions or take any other actions regarding Plaintiff's health care – including Plaintiff's requests to see a doctor or for stronger pain medication. As such, these jailers are not personally involved in or

directly responsible for any deprivation of Plaintiff's rights. Plaintiff fails to state a claim of deliberate indifference against Dillon Sparrow, Dakota Cross, Nick Bringer, and Hope Miller, and they will be dismissed. *See* 28 U.S.C. 1915(e)(2)(B)(ii).

### III. Defendants Eisenberg, Parrish, and Dr. Childress

Unlike the jailer defendants, Sheriff Parrish, Jail Administrator Eisenberg, and Dr. Childress made decisions and took actions that made them personally involved in, and directly responsible for, Plaintiff's lack of medical treatment for his jaw pain. Plaintiff's amended complaint contains sufficient factual allegations to suggest that Parrish, Eisenberg, and Dr. Childress knew of and deliberately disregarded Plaintiff's serious medical need.

According to the complaint filings, Eisenberg responded to eight of Plaintiff's requests for medical attention in September and October 2021, reporting that he had contacted a doctor at least six times and that the doctor had deemed an appointment unnecessary. Plaintiff alleges that the doctor who denied him a medical exam and medical care is defendant Dr. Childress. Eisenberg explained to Plaintiff that the denial of a doctor's appointment is a discretionary decision made by the jail doctor. However, Eisenberg also informed Plaintiff that he could choose to see a different doctor and an appointment would be made for him. There is no evidence that Eisenberg ever helped Plaintiff make an appointment and when Plaintiff asked to see a doctor at an Emergency Room in Hannibal, his request was denied by Sheriff Parrish. In his denial, Parrish states that Plaintiff's issue is a dental issue "as recommended by our physician." ECF No. 9 at 19. Subsequently, Parrish denied Plaintiff's request to see a dentist, stating that "regular dental care is not medically necessary." ECF No. 10 at 5. After four months of complaint about jaw pain, it should have been obvious to Parrish that Plaintiff was not requesting "regular dental care."

Defendants Eisenberg and Parrish, as jail administrator and sheriff, presumably lack medical expertise. The Court acknowledges the Eighth Circuit's holding that: "Prison officials

lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists." *Holden*, 663 F.3d at 343 (citing *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). However, this holding is not applicable here because Plaintiff was never examined by medical staff and therefore there is no inmate diagnosis on which Eisenberg and Parrish can rely. Plaintiff was never examined by any 'inside' medical staff which directed that he be denied referral to an 'outside' doctor. As alleged by Plaintiff, Dr. Childress directed Eisenberg and Parrish to deny Plaintiff a doctor's appointment. Eisenberg and Parrish relied on Dr. Childress's over-the-phone diagnosis to deny Plaintiff medical care for a four-month period. It wasn't until Plaintiff complied with Eisenberg's suggestion and requested to see a local Emergency Room doctor, that the reason for denying Plaintiff's requests changed to a reliance on an over-the-phone doctor diagnosis that Plaintiff's problem is dental and not medical.

Dr. Childress, as the Jail Doctor, never came to see Plaintiff himself and denied four months of Plaintiff's requests for a doctor's appointment. Plaintiff repeatedly complained of ongoing pain that caused difficulty eating and was unrelieved by over-the-counter and prescribed medications.

Accepting Plaintiff's allegations as true, as required for purposes of initial review under § 1915(e)(2), Plaintiff has stated a facially plausible claim of deliberately indifferent medical care against defendants Eisenberg, Parrish, and Dr. Childress. Plaintiff sufficiently alleges that these defendants knew about and deliberately disregarded his serious medical need. *See also Morris v. Cradduck*, 954 F.3d 1055 (8th Cir. 2020)) (discussing that delayed access to medical care for a non-medical reason, like budgetary concerns, may constitute deliberate indifference in certain circumstances); *Allard v. Baldwin, M.D.*, 779 F.3d 768, 772 (8th Cir. 2015) (noting "a doctor's decision to take an easier and less efficacious course of treatment" may constitute deliberate indifference); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (*citing Patterson v. Pearson*, 19 F.3d

439 (8th Cir. 1994)) (deciding a "three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983"). Defendant's actions could demonstrate "intentional maltreatment or a refusal to provide essential care." *Jackson*, 756 F.3d at 1066. Furthermore, Plaintiff's repeated allegations of untreated pain imply an "unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346.

Finally, Plaintiff names defendants Jerrod Eisenberg, David Parrish, and Dr. Herbert Childress in both their individual and official capacities. These defendants are all employees of Lewis County and its Jail. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work and they require proof that a policy or custom of the entity violated a plaintiff's rights. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by 'a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Grayson v. Ross*, 454 F.3d 802, 810-11 (8th Cir. 2006) (quoting *Monell*, 436 U.S. at 694).

Plaintiff may prevail on his official-capacity claims by identifying a policy that "constitutes either deliberate indifference to medical needs or a punishment." *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997) (citations omitted). Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, Plaintiff does not plead the existence of a specific unconstitutional Jail policy or custom. However, he argues that defendants Eisenberg, Parrish, and Dr. Childress violated his constitutional rights by enforcing and relying on a Jail policy that medical decisions concerning

an inmate's health can be made by an off-site physician without a physical examination, even after four months of continued complaints of pain, difficulty eating, and lack of relief from over-the-counter and prescribed medications. Although the Jail policy for dealing with medical complaints (by calling a doctor) may appear constitutional on its face, the denial of adequate health care to Plaintiff was the product of a deliberate or conscious choice by these defendants. *See Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007). This is evidenced by the exhibit submitted by Plaintiff demonstrating that another Lewis County Jail inmate was scheduled for outside medical care after similar complaints of pain and difficulty eating. *See* ECF No. 12.

The facts alleged by Plaintiff are enough to support the assertion that a deliberately indifferent policy concerning medical care exists at the Jail. Furthermore, Dr. Childress's decisions to repeatedly denied Plaintiff a medical exam were decisions taken by a governmental agent who possessed final authority over a particular decision. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (stating that official capacity suits involve either allegedly unconstitutional policies or actions taken by a governmental agent who possess final authority over a particular decision). As such, the Court will direct that process issue against defendants David Parrish, Jerrod Eisenberg, and Dr. Herbert Childress, in both their individual and official capacities as employees of the Lewis County Jail, on Plaintiff's claim of deliberately indifferent medical care.

## Conclusion

Jailer defendants Dillon Sparrow, Dakota Cross, Nick Bringer, and Hope Miller will be dismissed for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B) because these defendants were not personally involved in or directly responsible for any alleged deprivation of Plaintiff's rights. However, Plaintiff has stated a sufficient claim of deliberately indifferent medical care to survive initial review under 28 U.S.C. § 1915(e)(2) against defendants Dr. Childress, Jerrod

Eisenberg, and David Parrish in both their individual and official capacities. As a result, the Court will order that process be issued against these Defendants on the amended complaint.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the amended complaint as to defendants Dillon Sparrow, Dakota Cross, Nick Bringer, and Hope Miller because the amended complaint fails to state a claim upon which relief can be granted as to these defendants. Plaintiff's claims against defendants Dillon Sparrow, Dakota Cross, Nick Bringer, and Hope Miller are **DISMISSED without prejudice**. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the amended complaint as to defendants Jerrod Eisenberg, David Parrish, and Dr. Herbert Childress, in their individual and official capacities, as to Plaintiff's claims of deliberate indifference. Defendants Jerrod Eisenberg and David Parrish shall be personally served by issuance of summons and service by the U.S. Marshals Service at the Lewis County Jail, 107 South Washington Street, Monticello, MO 63457. Defendant Dr. Herbert Childress shall be personally served by issuance of summons and service by the U.S. Marshals Service at the address provided by Plaintiff: Lewistown Medical Clinic, 105 E. Quincy Street, Lewistown, MO 63452.

**IT IS FURTHER ORDERED** that defendants Eisenberg, Parrish, and Dr. Childress shall respond to the amended complaint within the time provided by the applicable provisions of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that an appeal of this partial dismissal would not be taken in good faith.

**IT IS FINALLY ORDERED** that the Clerk of Court is directed to change the docket sheet to reflect the spelling provided by Plaintiff in the amended complaint for defendant "Jerrod Eisenberg."

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 7th day of April, 2022.

                                                  CATHERINE D. PERRY
                                                  UNITED STATES DISTRICT JUDGE