UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

MARCUS ALAN MAYS,                        )
                                         )
            Plaintiff,                   )
                                         )
    v.                                   )        Case No. 2:21 CV 63 CDP
                                         )
JERROD EISENBURG, et al.,                )
                                         )
            Defendants.                  )

## MEMORANDUM AND ORDER

At all times relevant to this lawsuit, plaintiff Marcus Alan Mays was a

pretrial detainee held at the Lewis County Jail in Monticello, Missouri.  He filed

this action under 42 U.S.C. § 1983 in October 2021 alleging that Lewis County Jail

officials Jerrod Eisenburg and David Parrish and physician Herbert Childress,

acting in their individual and official capacities, were deliberately indifferent to his

serious medical needs – namely jaw pain that interfered with his daily activities,

including eating.  He filed an amended complaint on January 3, 2022.  All

defendants move for summary judgment in their individual capacities on the basis

of qualified immunity.  Childress also argues that he is not liable under § 1983

because he is not a State actor.  Defendants raise an additional argument in their

reply brief that Mays has no legal argument to support his official-capacity claim.

For the reasons that follow, I will deny the defendants' motion for summary

judgment.  I will set the case for trial by separate Order.

## I.  Background

For summary judgment purposes, I view the evidence in the light most favorable to Mays as the nonmoving party and draw all reasonable inferences in his favor.  *Scott v. Harris,* 550 U.S. 372, 379 (2007).

Mays was a pretrial detainee at Marion County Jail before he was transferred to Lewis County Jail.  Before his transfer to Lewis County, Mays was involved in an altercation and was punched in the jaw.  He experienced pain in his jaw upon and after being punched.

Mays continued to experience jaw pain after his transfer to Lewis County, and the pain worsened to a point where his eating was affected as well as his ability to open his mouth.  On September 8, 2021, Mays submitted an Inmate Request Form asking to see a doctor "due to a jaw injury" from being "attacked by 2 individuals," which caused him to have issues "biting food, chewing food, and opening my mouth to take bites of food."  (Amd. Compl., ECF 9 at hp. 10.[1])  Defendant Eisenburg, the Jail Administrator, responded on September 10 that he would contact the doctor's office and schedule a doctor's appointment if necessary.  (*Id.*)  Days later, Eisenburg told Mays that no doctor's appointment was scheduled.

---

[1] Given the several pages of attachments included with and supplementing Mays's amended complaint, I will refer to the page number identified in the ECF header ("hp") when citing to the relevant document.

(Mays Affid., ECF 59-1, ¶ 12.)  In an Inmate Complaint Form submitted September 13, Mays reported that he did not "understand how a medical decision can be made without an exam."  (ECF 9 at hp. 11.)  That same date, Eisenburg responded, "We report all medical issues to the jail doctor who decides a course of treatment which we follow."  (*Id.*)

Mays submitted another Inmate Request Form on September 16, asking to see a doctor for his jaw pain or to have an x-ray taken.  He reported that he could not "bite anything too hard," that "chewing is extremely difficult," that he hears "clicking and popping" when he chews, and that it felt like his "jaw snags on something when I try to open it."  He also reported that taking 600mg of ibuprofen and four Tylenol three times a day did not help the pain.  (ECF 9 at hp. 12.)  In an Inmate Complaint Form submitted that same date, Mays reported that he could not eat the night before because he could not bite or chew the food that was offered and that he had been "refused to see the dr. because somehow the dr. knew by talking to the jailer over the phone that I didn't need a dr. visit."  (*Id.* at hp. 14.)  Eisenburg responded to these submissions the following day, stating that he would speak to the doctor and follow his orders, and that Mays could purchase items from the commissary if he did not like the meals that were provided to him.  (*Id.* at hpp. 12, 14.)

In an Inmate Complaint Form submitted September 20, Mays reported that

he had not been taken to see a doctor despite experiencing extreme jaw pain when he tries to bite, chew, yawn, or open his mouth wide.  In response, Eisenburg stated that the doctor had been contacted, that no appointment was made, and that medication was given "at the doctor's discretion."  (ECF 9 at hp. 15.)  In another Inmate Complaint Form submitted September 28, Mays complained again about not being able to see a doctor regarding his jaw issue, and he questioned why he had been given an antibiotic despite not having been examined.  Eisenburg responded, "The doctor was called, and he deemed an appointment was not needed at this time.  As for why an antibiotic was prescribed is a medical question I cannot answer at this time."  (*Id.* at hp. 16.)

In an Inmate Complaint Form submitted on October 5, Mays reported that the antibiotic did not help and that his jaw condition was unchanged.  In response, Eisenburg advised Mays that if he felt that "a doctor other than ours would be better, locate and have an appointment made."  (ECF 9 at hp. 17.)  In response to a follow up complaint submitted October 10, Eisenburg stated, "Doctors have been contacted for your medical needs.  If you do not like the doctor we have available, provide a doctor within the area & we will make an appointment."  (*Id.* at hp. 18.)  On October 14, Mays asked to be taken to an emergency room in Hannibal given that he continued to experience extreme pain with biting, chewing, and yawning.  On October 19, defendant Parrish, the Lewis County Sheriff, responded, "No,"

stating that Mays had been advised that this was a "dental issue as recommended by our physician." (*Id.* at hp. 19.) Parrish then advised that Mays's family could work with Jail staff to make arrangements for him to see a dentist. (*Id.*) When on January 2, 2022, Mays requested a dental appointment because he could not get an appointment with the doctor, Parrish simply responded, "No." (Amd. Compl. Suppl., ECF 10 at hp. 2.)

In an Inmate Complaint Form submitted January 2, 2022, Mays reported that he had been complaining about his jaw pain since September, that Jail staff refused to schedule a doctor's appointment, that he was advised by jailers and not a doctor that he had a dental issue, and that Jail staff said they could not do anything for him because dental is not part of their medical responsibility. Parrish responded, "Regular dental care is not medically necessary. . . . We understand your jaw may hurt and as prescribed by our physician we have offered Tylenol or ibuprofen on a regular basis to insure you are not in pain." (ECF 10 at hp. 5.)

In an Inmate Request Form dated February 25, 2022, another detainee at Lewis County Jail, Michael Henson, reported that he had two loose teeth that caused him pain, which was beginning to interfere with his eating and sleeping. Eisenburg responded that they would contact the doctor, and a dental appointment was made. (Amd. Compl. Suppl., ECF 12.)

## II. Legal Standard

Summary judgment is appropriate if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Meyer v. McKenzie Elec. Coop., Inc.*, 947 F.3d 506, 508 (8th Cir. 2020); Fed. R. Civ. P. 56(a). The moving party bears the burden of informing the Court of the basis of its motion and demonstrating the absence of an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004).

I view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. *Scott,* 550 U.S. at 379. A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## III. Discussion

The Fourteenth Amendment protects pretrial detainees from officials' "deliberate indifference" to their "serious medical needs." *Estelle v. Gamble*, 429

- 6 -

U.S. 97, 104 (1976).  As a pretrial detainee, Mays was "entitled to at least as much

protection under the Fourteenth Amendment as under the Eighth Amendment."

*Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (quoting *Hartsfield v.*

*Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)).  *See also Hartsfield v. Colburn*, 491

F.3d 394, 396 (8th Cir. 2007) (noting that deliberate indifference is "the

appropriate standard of culpability for all claims that prison officials failed to

provide pretrial detainees with adequate . . . medical care.").  To prove his

deliberate indifference claim, Mays must show that "(1) he suffered from an

objectively serious medical need, and (2) defendants knew of the need yet

deliberately disregarded it."  *Johnson*, 929 F.3d at 575 (quoting *Hartsfield*, 371

F.3d at 457).  The jail officials' background knowledge is part of the analysis.

*Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).  "Whether

an inmate's condition is a serious medical need and whether an official was

deliberately indifferent to the inmate's serious medical need are questions of fact."

*Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011).

In their motion for summary judgment, defendants argue that they are

entitled to qualified immunity in their individual capacity because Mays did not

suffer from a serious medical need and defendants' actions showed that they were

not indifferent to his complaints.  In their reply brief, defendants contend that Mays

cannot legally support his official-capacity claim.

The background recited above is largely taken from Mays's verified amended complaint, which includes 1) attached Inmate Request/Complaint Forms Mays submitted to the Jail between September 8 and October 14, 2021, with Eisenburg's and Parrish's responses; 2) Mays's Inmate Request/Complaint Forms submitted January 2, 2022, and Parrish's responses (supplemental exhibit); and 3) detainee Henson's February 2022 Inmate Request Form with the jailers' responses (supplemental exhibit).  *See* Fed. R. Civ. P. 10(c).  In response to defendants' motion for summary judgment, Mays submitted his affidavit which tracks and reiterates the allegations made in his verified amended complaint and Inmate Request/Complaint Forms.

On April 22, 2022, I conducted an initial review of Mays's amended complaint under 28 U.S.C. § 1915.  Upon review of the verified amended complaint, its attachments, and supplemental exhibits, I concluded that Mays had "demonstrated an objectively serious medical need" given that his "consistent and repeated assertions of jaw pain over a four-month period – with no relief from medications and causing [him] to skip meals – [was] so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  (Memo. & Order, ECF 13 at p. 9 (internal quotation marks omitted).)  I also determined that Mays's allegations and supporting evidence suggested that Eisenburg, Parrish, and Childress "knew of and deliberately disregarded [Mays's] serious medical

needs" (*id.* at 11); that their actions "could demonstrate intentional maltreatment or a refusal to provide essential care" (*id.* at p. 13 (internal quotation marks omitted)); and that Mays's "repeated allegations of untreated pain imply an unnecessary and wanton infliction of pain." (*Id.* (internal quotation marks omitted).)

Nearly one year later, on March 23, 2023, defendants filed their motion for summary judgment and based it on the same evidence I had before me on § 1915 review, that is, the verified amended complaint, attachments, and supplemental exhibits. (*See* ECF 38-1 at A-01–A-032.) They also submitted 1) a custody sheet, endorsed by defendant Parrish, showing that Mays was detained at the Jail from August 2018 to December 2019 and from May 2021 to October 2022, and was delivered to the Missouri Department of Corrections on October 31, 2022 (*id.* at A-033); and 2) a letter dated July 29, 2004, from defendant Parrish to defendant Childress's medical office detailing the billing structure Childress had in place with the Lewis County Sheriff's Office for helping it "deal with the multitude of health problems we have with our prisoners." (*Id.* at A-034.) The defendants submitted no other evidence with their motion. It appears, therefore, that on the same facts and information from which I concluded on § 1915 review that Mays sufficiently showed he had a serious medical need and defendants were deliberately indifferent to it, defendants now want me to say, "Nevermind. The same evidence shows otherwise." That I will not do.

As the moving party on summary judgment, the defendants have the burden of showing that there is no genuine issue of material fact regarding their alleged deliberate indifference to Mays's serious medical need, and they must properly support their motion. *Jones v. Corizon Med. Servs.*, No. 1:16-CV-55 SNLJ, 2017 WL 2403750, at *2 (E.D. Mo. June 2, 2017). But the defendants here have presented no evidence that refutes Mays's factual assertions or counters the evidence submitted with his amended complaint. There simply is no evidence to alter my earlier conclusions that Mays suffered a serious medical need and that his evidence sufficiently suggested that defendants were deliberately indifferent to that need. I cannot say, therefore, that defendants have met their burden of demonstrating the absence of an issue for trial. And, as discussed below, defendants' motion fails for additional reasons as well.

A.     Dr. Childress is a State Actor

I reject defendants' argument that Childress is not a State actor in the circumstances of this case and cannot be liable under § 1983. Although it appears that Childress is a private doctor, his provision of medical services to persons detained by the State pursuant to an agreement with the State is State action attributable to the State. *West v. Atkins*, 487 U.S. 42, 57 (1988).

I also reject defendants' assertion that the nature of the Sheriff's Office's medical-care agreement with Childress relieves him of § 1983 liability because the

agreement is self-described as a "memorandum of understanding" instead of a contract. *Cf. Estate of Schwartz v. Assisted Recovery Ctrs. of Am., LLC,* No. 4:16 CV 673 JMB, 2017 WL 840542, at *6 (E.D. Mo. Mar. 3, 2017) (part-time private doctors who provide medical services to confined persons pursuant to a contract with the State act under color of law).  The agreement here clearly sets out specific services that Childress provides to Lewis County prisoners in exchange for specific fees paid by the County.  It acknowledges past and current performance.  And there is nothing in the agreement indicating that it is incomplete, that any further details are left to be settled in the future, or that future performance is not expected absent additional terms.  *See* Restatement (Second) of Contracts § 27 (1981); *cf. Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc.*, 519 F.3d 421, 427 (8th Cir. 2008) ("When negotiating and drafting countless contracts in our prior legal careers, we rarely if ever encountered a 'memorandum of understanding' or a 'preliminary agreement' that required nothing more than the wordsmithing of a true scrivener to become a 'final contract.'").

There is also no dispute that Childress, in fact, provided medical services to detainees at the Lewis County Jail.  The letter itself acknowledges as much.  Moreover, both Eisenburg and Parrish, acting in their official capacities as Jail officials, referred to Childress as the "jail doctor" and "our physician," and their defense to this action is that they were following Childress's orders when it came

to Mays's medical care.  "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State."  *West*, 487 U.S. at 55-56.  Given Childress's understood function in providing medical services to detainees at the Lewis County Jail in exchange for fees paid by the State, Childress's actions here are attributable to the State.

B.    Defendants are Not Entitled to Qualified Immunity

Qualified immunity protects government officials who are sued in their individual capacity for money damages under § 1983.  *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013); *Wolfe v. City of Town & Country*, 599 F. Supp. 3d 784, 790 (E.D. Mo. 2022).  The qualified immunity analysis involves two inquiries: (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the violation.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences."  *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008).  "[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment."  *Morris v. Zefferi*, 601 F.3d 805, 808 (8th Cir. 2010) (internal quotation marks omitted) (alteration in *Morris*).

Defendants claim they are entitled to qualified immunity in their individual capacity because Mays's "dental pain" was not a serious medical need and their response to his pain did not rise to the level of deliberate indifference.  They focus their argument on whether there was a constitutional violation.  They do not address the "clearly established" prong of the analysis.

        1.   *Constitutional Violation*

            a.  Serious Medical Need

As set out above, I have already concluded that the evidence Mays submitted with his amended complaint sufficiently showed that he suffered from a serious medical need.  (*See* ECF 13 at pp. 9-10.)  Defendants have provided no evidence to refute this claim or my conclusion.  To the extent defendants argue that Mays has not provided a doctor's diagnosis to suggest that he suffered from anything other than tooth pain, the burden is on the defendants – not Mays – to provide support for their assertion that Mays did not suffer a serious medical need.  Regardless, a medical need that would be obvious to a layperson – which the existing evidence here has already shown (*see id.*) – makes verifying medical evidence unnecessary.  *Schaub*, 638 F.3d at 914.  And this is not a medical negligence case requiring a medical opinion.  Nor is it a delay-in-treatment case requiring a showing that such delay had detrimental effect on Mays's condition.  *See Presson v. Reed*, No. 6:19-CV-03192-RK, 2022 WL 107105, at *6 (W.D. Mo. Jan. 11, 2022), *aff'd*, 65 F.4th

357 (8th Cir. 2023).

Defendants also appear to assert that Mays's failure to produce evidence that he received medical care for his injuries after his October 2022 transfer to the Missouri Department of Corrections shows that the pain he experienced at the Lewis County Jail from September 2021 to January 2022 was not a serious medical need. Again, the defendants bear the initial burden to produce evidence on their summary judgment motion, not Mays. Nevertheless, regardless of whether or not Mays sought treatment more than nine months later at another institution is irrelevant to his claim that defendants were deliberately indifferent to the pain he experienced at the Jail from September 2021 to January 2022. *See Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (fact that prisoner's wound healed properly does not indicate that plaintiff did not endure physical pain during time he was denied treatment), *cited approvingly in Dadd v. Anoka Cnty.*, 827 F.3d 749, 755 (8th Cir. 2016).

On the record before the Court, there is at the very least a triable issue of fact as to whether Mays suffered an objectively serious medical need.

b.  Deliberate Indifference

In seeking summary judgment, defendants point to the following as demonstrating that their conduct did not violate Mays's right to medical care:  1) Eisenburg relayed Mays's complaints to Childress, gave medication to Mays that

Childress had ordered, and offered to coordinate with Mays's family to obtain outside care; 2) Parrish responded to Mays's continued complaints, advised him that Childress determined that the pain was a dental issue, and offered to arrange with Mays's family to obtain outside dental care; and 3) Childress provided medical treatment to Mays, and Mays has produced no evidence that the treatment was inadequate.  Defendants argue that Mays's complaints amount to nothing more than a disagreement with the treatment given, that doctors are entitled to make their own medical judgments, and that jail officials are entitled to rely on the opinions and decisions of doctors.

I agree that jailers can rely on doctor's orders.  *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042-43 (8th Cir. 2006).   But the information the doctor had in giving those orders is relevant to whether the jailers' reliance was reasonable. *McRaven v. Sanders*, 577 F.3d 974, 981 (8th Cir. 2009).  It is unreasonable to rely on a medical assessment grounded on incorrect information.  *Id.*

Here, from their review of Mays's Inmate Request/Complaint Forms, Eisenburg and Parrish knew that Mays suffered from jaw pain for several months, that the pain interfered with his ability to eat and open his mouth, and that severe pain remained after treatment.  And Eisenburg knew that Mays claimed his pain was the result of a jaw injury he suffered after being attacked.  While it appears from the Forms that Eisenburg arranged for a doctor to be contacted, there is no

evidence before the Court as to whether, in fact, a doctor was contacted or what information was relayed to him, and thus whether the doctor's recommended treatment was reasonable.  There is also no evidence showing that the doctor was informed that the treatment regimen of Tylenol, ibuprofen, and an antibiotic did not help Mays's pain.  Without knowing what the doctor knew, I cannot say that either Eisenburg's or Parrish's reliance on the doctor's orders was reasonable.

It is the State's responsibility to provide adequate medical care to its pretrial detainees.  *Estelle*, 429 U.S. at 103-04; *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 199-200 (1989); *Butler v. Fletcher*, 465 F.3d 340, 344-45 (8th Cir. 2006); *Estate of Schwartz*, 2017 WL 840542, at *6.  Here, when Mays attempted to comply with Eisenburg's and Parrish's directive to find an outside doctor on his own or to seek treatment from a dentist, those requests were denied.  Indeed, Parrish simply said "no" when Mays submitted to his suggestion that he request to see a dentist for his pain.  Parrish's reason given later – that "regular dental care" is not medically necessary – was unreasonable given that Mays had been complaining of jaw pain for months with reports of being limited in his ability to eat and open his mouth because of the pain.  Mays was not requesting a dental cleaning.  And when another inmate requested to see a dentist for similar pain that interfered with that inmate's ability to eat and sleep, the Jail made a dental appointment with no questions asked.

I also agree that doctors may exercise their medical judgment and that mere disagreement as to a course of treatment does not give rise to a constitutional violation. *Estelle*, 429 U.S. at 107; *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018). But, again, there is no evidence as to what symptoms were relayed to Childress and thus what his medical judgment was based on. There is also no evidence as to what Childress knew regarding Mays's continued complaints of pain despite treatment. He either did not know of them or knew of them and chose not to act. Nor is there any evidence that Childress considered Mays's issue to be dental in nature or, if he did, what he based that opinion on. Neither Childress nor any other medical professional examined Mays in response to his complaints. Whether this was because of the information being relayed or an intentional refusal to see Mays is unknown since defendants have presented no evidence relevant to this inquiry by affidavit or otherwise. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (court "particularly troubled" by the absence of inmate-plaintiff's medical records from summary judgment record). *Cf. Hall v. Higgins*, 77 F.4th 1171, 1179 (8th Cir. 2023) (lengthy medical records submitted on summary judgment showed detainee seen by Jail's medical professionals every time he requested medical treatment); *Johnson*, 929 F.3d at 574 (medical records and affidavits submitted on summary judgment showed dentist examined and treated detainee-plaintiff several times in response to continued complaints of pain); *Barr*,

909 F.3d at 920-21 (medical records submitted on summary judgment showed treatment rendered after inmate-plaintiff was seen by nurse practitioner, mental health physician, neurologist, and optometrist); *Jolly v. Knudsen*, 205 F.3d 1094, 1096-97 (8th Cir. 2000) (on summary judgment, prison doctor's affidavit showed that he saw inmate-plaintiff on numerous occasions to monitor reaction to treatment); *Dulaney v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (medical records and affidavits produced on summary judgment showed no deliberate indifference).

I concluded in my April 2022 Memorandum and Order that Mays objectively demonstrated that he had a serious medical need from at least September 2021 to January 2022, and defendants have failed to meet their initial burden on summary judgment to show otherwise. Moreover, defendants have presented nothing to counter the evidence I reviewed under § 1915 that suggested that defendants' actions demonstrated intentional maltreatment or a refusal to provide essential care and implied an unnecessary and wanton infliction of pain. Accordingly, whether defendants were deliberately indifferent to Mays's serious medical need is a disputed fact that cannot be resolved on this record. Given that there is a genuine dispute on the predicate facts, defendants are not entitled to qualified immunity.

2.     *Clearly Established Right*

Defendants do not address the "clearly established" prong of the qualified immunity analysis and focus entirely on whether there was a constitutional violation.  Nevertheless, it is clear that a pretrial detainee has a constitutional right to adequate medical care while in custody, *see West*, 487 U.S. at 55, and that that right may be violated when officials intentionally deny access to medical care. *Estelle*, 429 U.S. at 104-05.

At the time of the conduct alleged here, it was clearly established that refusing for months to allow a detainee to see a doctor for severe pain that interfered with daily activities, including eating, and did not abate with pain relievers can constitute deliberate indifference to a serious medical need.   *Cf. Dulaney*, 132 F.3d at 1239 (deliberate indifference may be demonstrated by prison guards who intentionally deny access to medical care, or by prison doctors who fail to respond to prisoner's serious medical needs); *Moore v. Jackson*, 123 F.3d 1082, 1084-87 (8th Cir. 1997) (per curiam) (inmate repeatedly complained of pain in medical requests and grievances but did not receive treatment for eight months); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (three-week delay in referring inmate to medical provider, coupled with knowledge that inmate is suffering, can support a finding of an Eighth Amendment violation); *Smith*, 919 F.2d at 93 (prison doctor's course of treatment, or lack thereof, can so deviate from

professional standards as to amount to deliberate indifference).  *See Presson v. Reed*, 65 F.4th 357, 369 (8th Cir. 2023) (Court's obligation is to closely examine the facts to determine what right is at issue and thus whether qualified immunity is appropriate).

As stated above, whether Mays's condition was a serious medical need and whether defendants were deliberately indifferent to that need are questions of fact, and defendants' proffer on those questions does not establish the absence of a genuine dispute.  Defendants are therefore not entitled to qualified immunity on Mays's claim.

## C.    Liability Based on Official Capacity

Mays's claims against the defendants in their official capacity are equivalent to claims against Lewis County, the employing governmental entity.  *Hall*, 77 F.4th at 1178.  "A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right or if the municipality failed to adequately train its employees."  *Id.* (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)).  Mays does not raise a failure-to-train claim.

A "custom" is an unofficial practice characterized by a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees."  *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999);

*see also Hall*, 77 F.4th at 1180.  To establish a defendant's official liability based on custom, the plaintiff bears a "heavy burden" to demonstrate not only the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct, but also the defendant's deliberate indifference to or tacit authorization of such conduct after having notice of the misconduct and, further, that the custom was the moving force behind the constitutional violation and plaintiff's injuries.  *Mettler*, 165 F.3d at 1204; *see also Mick v. Raines*, 883 F.3d 1075, 1079-80 (8th Cir. 2018).  The pattern of unconstitutional conduct must be so pervasive and widespread as to have the effect and force of law.  *Hall*, 77 F.4th at 1180.  Neither Mays's allegations nor the evidence he submitted with his amended complaint shows that his experience was the consequence of a "pervasive and widespread" pattern or custom at the Jail.

"'To prove the existence of a policy' for municipal liability purposes, [Mays] may point to 'an official policy' or 'a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'"  *Hall*, 77 F.4th at 1180 (quoting *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016)).  *See also Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989).  In my April 2022 Memorandum and Order, I determined that Mays sufficiently alleged that a deliberately indifferent policy concerning medical care existed at the Jail, given that the denial of a medical examination in response

to a serious medical need appeared to be a deliberate or conscious choice of the defendants, and Childress appeared to be the government agent with final authority over that decision.  (*See* ECF 13 at pp. 13-14.)  A plaintiff in an official-capacity suit can establish liability by showing that the defendant "possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." *Nix*, 879 F.2d 433.  Moreover, Mays argues that as Jail Administrator and Sheriff, Eisenburg and Parrish maintained that unconstitutional policy by denying and continuing to deny his requests to see a doctor, directing Mays to find an outside doctor himself, and characterizing his serious medical need as "regular" and thereby relinquishing the Jail's responsibility to provide care.  Defendants have provided no evidence or argument showing otherwise and consequently have failed in their burden to demonstrate the absence of an issue for trial on Mays's official-capacity claim.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment [36] is **DENIED**.

A separate Order setting this case for trial will be entered.

_Catherine D. Perry_
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of October, 2023.

- 22 -